Diana P. MAY, Plaintiff,

v.

**DOVER ELEVATOR COMPANY,**
Defendant.

**File No. 3:93cv684.**

United States District Court,
E.D. Virginia,
Richmond Division.

March 8, 1994.

Gary R. Hershner, Morrissey & Hershner, Richmond, VA, for plaintiff.

Beverly W. Snukals, Mezzullo & McCandlish, Richmond, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Diana P. May ("May") instituted this action in state court against Chippenham Hospital, Inc. (the "Hospital") and Dover Elevator Company ("Dover") seeking compensatory damages for personal injuries she claims to have suffered on October 22, 1987, when the elevator in which she was riding landed abruptly on the first floor of the Hospital after an allegedly rapid, uncontrolled descent from the third floor. The action was filed on October 6, 1989, but May withheld service until August 31, 1990. After three continuances at her behest, May took a voluntary non-suit two weeks before the trial scheduled for August 1992. She instituted a second action in state court on December 3, 1992, again naming the Hospital and Dover as defendants. On September 17, 1993, May voluntarily dismissed the action as to the Hospital, and Dover timely removed the action to this court.[1] Following full discovery, Dover moved for summary judgment. For the reasons set forth below, Dover's motion is granted.

## STATEMENT OF FACTS

In 1987, Dover was under contract to maintain and repair five of the Hospital's elevators. The Hospital was responsible for maintenance and repair of certain portions of the elevator equipment which were not covered by the maintenance contract, as well as for the upkeep of the room where the elevator equipment was located.[2] According to the maintenance contract, Dover did not assume possession of, or control over, any part of the elevator equipment. The Hospital's maintenance staff also had free access to the basement area which contained both the elevator equipment and several types of non-elevator equipment. In pertinent part, the maintenance contract provides that Dover will:

(i) maintain the entire elevator equipment as hereinafter described ... and they will use all reasonable care to maintain the elevator equipment in proper operating condition;

(ii) regularly and systematically examine, adjust, lubricate as required, and if conditions warrant, repair or replace: machine, motor generator and controller parts; and

(iii) make any adjustments, repairs and replacements which it may be advisable to make before the next regular examination.

On October 22, 1987, May, a speech therapist employed by the Hospital, entered one of the elevators on the third floor, intending to travel to the first floor. The elevator doors closed and the elevator ascended without incident and stopped on the fifth floor, where its other occupants exited. According to May, the elevator began its descent and stopped briefly on the third floor where the doors opened and closed quickly. Thereafter, it descended quickly to the first floor, but failed to stop properly at the first floor landing, coming to rest instead on the elevator's safety buffers eighteen inches below the first floor landing.

Immediately after the incident, representatives of Dover and the City Inspector's office were called to the site. Dover representative Michael Moore ("Moore") arrived first. Moore moved the elevator so that it would be level with the first floor, and it functioned normally during this limited movement. City Inspectors Dale Powers and Mike Clark then arrived, followed by Moore's supervisor at Dover, Ed Nazworth. When the City Inspectors arrived, Moore again moved the elevator several times, all without incident.

---

1. May's motion to remand was denied by a Memorandum Opinion and Order filed on December 16, 1993.

2. According to the maintenance agreement, Dover was not responsible for the following: "refinishing, repairing or replacement of car enclosure, car doors, hoistway enclosure, hoistway door panels, frames and sills, car flooring and floor covering, light fixtures and lamps, main line power switches, breakers and feeders to controller, emergency power plant and associated contractors, emergency car light and battery, smoke and fire sensors with related control equipment not specifically part of elevator controls."

Moore and Nazworth then examined the elevator's normal "slowdown/stopping" device (the "normal device") and, finding nothing wrong, decided to force a bypass of the normal device to ascertain whether the elevator's backup "slowdown/stopping device" (the "backup device") was functioning properly. They then locked out the normal device, and observed that the elevator did not stop properly on the first floor but rather dropped to the safety buffers, as it allegedly had done when May was injured. Nazworth and Moore then reconnected the normal device and made several more unsuccessful efforts to replicate the incident as reported by May.

Although a visual inspection of the backup device reflected that the switches which controlled that device were opening and closing properly, Nazworth and Moore made an adjustment to the selector panel which held those switches by loosening some bolts and wedging a shim in the selector panel so that the switches would make a stronger contact with the cam that opened and closed them.

The undisputed record also shows that pursuant to its maintenance contract with the Hospital, Dover had performed a routine maintenance check on the elevator one week before this incident and that at that time the elevator had functioned normally. In addition, the parties agree that Dover had performed an annual "governor and safety test" on October 21, 1987, one day before the accident, and that the elevator had operated properly during that test. The governor and safety test neither required nor included testing of the normal device or the backup device.

May remained standing both as the elevator fell and when it came to an abrupt halt at the first floor. However, May testified that her "body was thrown completely forward and then backward from the knees," and that consequently she sustained various injuries.

The Amended Motion For Judgment contains two counts against Dover.[3] Count III alleges that Dover was negligent in fulfilling its maintenance and repair duties. Count IV alleges that Dover was "in exclusive control of the elevators" at Chippenham Hospital on October 27, 1987, and apparently intends to advance a negligence claim against Dover based on the doctrine of res ipsa loquitur. Dover has moved for summary judgment on both claims.

## DISCUSSION

### A. The Legal Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In so doing, the court must view the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment has the initial burden of informing the court of the basis for its motion, and of establishing that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Estate of Kimmell v. Seven Up Bottling Co.*, 993 F.2d 410, 412 (4th Cir.1993) (quoting Fed.R.Civ.P. 56(c)). Once this initial showing is made, the burden of production, but not persuasion, shifts to the non-moving party. The non-moving party may not rest on its pleadings, but must come forward with specific facts showing that evidence exists to support its claims and that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

**3.** Counts I and II asserted claims only against the Hospital and have been dismissed voluntarily by May. Count I charged that May's injuries were caused by the Hospital's negligent failure "to keep the elevator in a reasonably safe condi-tion." Count II alleged that the Hospital "was in exclusive control of the elevator on October 22, 1987" and apparently intended to assert a negligence claim against the Hospital based on the doctrine of res ipsa loquitur.

324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. It must demonstrate that there is a "genuine issue for trial." Fed. R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

Defendant's motion seeking summary judgment on May's claims will be considered with these controlling principles in mind.

## B. The Negligent Maintenance Claim

■ May alleges that the elevator's rapid descent from the third to the first floor and the abrupt landing on the safety buffers eighteen inches below the first floor was caused by Dover's negligent maintenance. May's expert and her counsel agree that the incident could not have occurred as May described it unless there was a failure of both the normal and backup devices. In other words, if the normal device had functioned properly and if only the backup device had failed, the elevator would have operated properly, as it did before the incident and when it was tested by Moore and the City Inspectors immediately after the incident. Therefore, as May's counsel agreed during oral argument, in order to avoid summary judgment May must show that there exists a genuine dispute of material fact supporting the theory that Dover negligently maintained both the normal and the backup devices. *C & P Telephone Company v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988).

It is undisputed that Dover was obligated to perform properly the maintenance responsibilities it undertook pursuant to the maintenance contract. May bases her claim that Dover breached its duty to properly maintain the normal device entirely on the testimony of Michael Shiflett, an expert witness. At the time of his deposition on September 27, 1993, Shiflett articulated two theories to explain why the normal device failed: (1) that the normal device had a "loose switch" which Dover failed to discover and repair; and (2) that when Dover performed the governor and safety test on the day before the accident, it left a "jumper" across the circuit board. However, in an affidavit dated January 31, 1994, filed in opposition to Dover's motion for summary judgment, Shiflett abandoned the "loose switch" theory and relied entirely on the "jumper" theory. May's brief takes the same tack, stating that in Shiflett's opinion:

> Dover Elevator was negligent by leaving a jumper across the circuitry at the time the inspection was done the day before the accident. This caused the elevator to descend as rapidly as it did, *and it is the only plausible explanation.*

(emphasis added). Hence, May's claim that Dover negligently maintained the normal device must stand or fall on the "jumper" theory.

According to May's brief, Shiflett's opinion is based on his position that when Dover's representative Moore "arrived at the scene of the elevator before the city inspector arrived, that he visually observed the jumper across the circuitry and removed those before anyone else could examine them."[4] Shiflett's deposition testimony discusses this subject and defines his view on it as the basis of his opinion:

> Q. . . . And then, finally, your fine (sic) final opinion is "Mr. Shiflett will further opine that Dover Elevator was negligent by leaving a jumper across the circuitry.

---

4. May's brief erroneously identifies Dover's representative as William Eugene Moore. According to all the evidence in the case, the only individual named Moore who was present on the day of the accident was Michael Eugene Moore and he was employed by Dover on October 27, 1987. William Gerald Moore also was employed by Dover. He was one of the mechanics who performed the governor and safety test the day before the incident, but there is no evidence that he was present on the day of the accident. In any event, both men have signed affidavits that they did not see any jumpers on the circuit board, place any jumpers there, or remove any jumpers from the circuit board. Therefore, May's mistaken reference to William Eugene Moore has no bearing on the disposition of this matter.

This caused the elevator to descend as rapidly as it did." *Let's take the first sentence. "Negligent by leaving a jumper across the circuitry;" what do you base that opinion on?*

A. Just on *I can't think of any other reason* why that unit would have bypassed all of those functions in one shot and then not requiring a repair, other than the minor adjustments that were done to the backup slowdowns.

Q. Okay. *Do you have any evidence, either from the documents, from statements made by anyone or anything that would lead you to that conclusion that a jumper was left across the circuitry?*

A. No visual evidence of it by anybody.

(Shiflett Depo. p. 102–103) (emphasis added). On January 31, 1994, Shiflett's affidavit further explained that his opinion is:

> based on the observation of the plaintiff in terms of the speed of how the elevator fell, the observations by several people as to the landing point of the elevator after the fall, *the fact that the only plausible explanation for the accident could have been defendant leaving the jumpers on the circuitry.*

(Shiflett Affidavit, p. 2) (emphasis added).

 Summary judgment is often inappropriate where, as here, an expert opinion is offered to discharge the non-moving party's burden to raise a triable issue. However, it is well-settled that an expert witness's endorsement of a wholly speculative theory of causation:

> does not cure the plaintiff's case under Virginia, or any other law. Courts, in fact, are "particularly wary of unfounded expert opinion when causation is the issue." ... The Court is mindful of the ease with which parties can procure so-called experts nowadays to endorse almost any theory of a case. The presence of such an expert does not divest the Court of its responsibility to determine the reasonableness of a theory of causation before submitting it to the jury. In this case, an expert's endorsement cannot save what remains a theory based on guesswork.

*Stokes v. Geismar,* 815 F.Supp. 904, 909 (E.D.Va.1993) (citations omitted). It is also established that, if an expert lacks a sufficiently reliable factual or scientific basis for an opinion, it would not be admissible at trial and hence cannot create a genuine dispute as to a material issue of fact. *Rickman v. Deere & Co.,* No. 3:92cv840 (E.D.Va. Sept. 8, 1993); *see also Gilbert v. Gulf Oil Corp.,* 175 F.2d 705, 709 (4th Cir.1949).

Shiflett's theory does not comport with any of the evidence in this case. The uncontroverted affidavits of Ed Nazworth, Michael Moore, William Moore and Michael Clark all state that at no time did anyone see, remove, or place a "jumper" across the circuit board. Further, it is undisputed that: (i) the governor and safety test performed by Dover the day prior to the incident did not involve the use of any jumper of the sort described by Shiflett, and (ii) there is no mention of any use of a jumper on the safety test report. Shiflett was not present on the day of the incident, and in fact did not examine the site of the incident until approximately six years after it occurred. Finally, Shiflett admitted that his opinion is not based on any visual evidence by anybody at the scene of the accident. Thus, Shiflett's endorsement of the "jumper" theory as "the only plausible explanation" for a malfunction of the normal device is wholly speculative, based entirely on conjecture, and is contrary to the undisputed evidence.

Consequently, the court finds that Shiflett lacked a sufficiently reliable factual basis upon which to base the opinion he has given that the failure of the normal device was caused by the presence of jumpers on the circuit board. Shiflett's testimony therefore would not be admissible at trial, and cannot serve to create a material issue of fact for summary judgment purposes. *Rickman v. Deere,* No. 3:92cv840 (E.D.Va. Sept. 8, 1993); *see also In re "Agent Orange" Product Liability Litigation,* 611 F.Supp. 1223, 1239 (E.D.N.Y.1985); *Gilbert v. Gulf Oil Corp.,* 175 F.2d 705, 709 (4th Cir.1949) ("expert testimony may not be received unless it appears that the witness is in possession of such facts as would enable him to express a reasonably accurate conclusion as distinguished from guess or conjecture."). For

these reasons, Dover is entitled to summary judgment on May's claim of negligent maintenance.

## C. The Res Ipsa Loquitur Claim

May asserts that Dover was in exclusive control of "the elevator equipment" on October 22, 1987, and that accidents like the one she experienced "do not generally occur in the absence of negligence." Under Virginia law, *res ipsa loquitur* applies only if May establishes these conditions: (1) the injury for which she seeks recovery is of a kind that ordinarily does not occur in the absence of negligence; (2) the injury she sustained was caused by an agency or instrumentality within Dover's exclusive control; and (3) the injury was not due to any contribution or voluntary activity on her part. *Easterling v. Walton*, 208 Va. 214, 216, 156 S.E.2d 787, 789 (1967); *Stillman v. Norfolk & W. Ry.*, 811 F.2d 834 (4th Cir.1987). Because the undisputed facts show that Dover was not in exclusive control of either the elevator or the machine room where the elevator controls were located, Dover is entitled also to summary judgment on Count IV.

The contract specified that Dover was responsible for only a portion of the elevator maintenance. The remainder of the maintenance, by necessity, was the responsibility of the Hospital. In recognition of this circumstance, the maintenance contract between the Hospital and Dover explicitly stated that Dover "does not assume possession or control of any part" of the elevator equipment. It is also undisputed that the elevator controls were located in an unlocked room in the basement of the hospital. The door to the basement was equipped with a lock, but employees of both the Hospital's maintenance department and its security department had keys which gave them access to the basement and to the elevator controls. There is no evidence from which a reasonable jury could conclude that Dover had exclusive control of the elevator or the room in which the controls were housed. Accordingly, May's reliance on res ipsa loquitur fails as a matter of law and Dover is entitled to summary judgment.

Accordingly, May's claims and this action are dismissed with prejudice.

In response to the summary judgment motion, May moved for leave to take the depositions of forty former and current employees of the Hospital. May's counsel asserted that "these witnesses will deny or otherwise refute any contention or speculation by Dover Elevator Company that they sabotaged or otherwise affected the relevant machinery of the elevator in this case." May has known for several years about these former and current employees and has not interviewed them to determine what, if any, evidence they could give that is material to May's case. The belated request to take these forty depositions is simply an effort to avoid the dismissal to which, by law, Dover is entitled as a result of a fully developed record, extensive discovery, and the evidence offered in deposition and affidavit by May's own expert witness.

The record is clear that May has no case. If May had a genuine basis for contending that any of the forty putative deponents could change that situation, she should have interviewed them and submitted affidavits outlining their relevant testimony which, if accepted by the finder of fact, would require submission of the case to a jury. The sparse, conclusory statements made in May's pleadings are legally insufficient to satisfy the requirements of Fed.R.Civ.P. 56, or to provide a basis for forestalling consideration of Dover's motion for the purpose of deposing forty more people who, for all that appears in the record, would not preclude the entry of summary judgment against May.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is so ORDERED.