**Kelly R. MISKIN, Plaintiff**

v.

**BAXTER HEALTHCARE CORP.
et al.   Defendant**

**No.  CIV. A. WMN–92–2975.**

United States District Court,
D. Maryland.

Sept. 16, 1999.

---

Thomas A. Gentile, Harry W. Goldberg, Chevy Chase, MD, for Plaintiff.

Carol L. Nicolette, Goodell, DeVries, Leech & Gray, Baltimore, MD, for Defendant.

### MEMORANDUM

GRIMM, United States Magistrate Judge.

This case has been assigned to me for final disposition, with the consent of the parties.[1]  Local Rule 301.4; 28 U.S.C. § 636(c).  Currently ripe for resolution is the motion for summary judgment filed by defendant Baxter Healthcare Corporation ("Baxter"), which has been fully, indeed too-fully, briefed.[2]  (Papers No. 22, 23, 26, 28, 33, 36, and 37.)  No hearing is necessary.  Local Rule 105.6; *Sakaria v. TWA*, 8 F.3d 164, 169 (4th Cir.1993).  For the reasons explained below, Baxter's motion is granted.

1. On November 18, 1998, the parties initially agreed to a provisional consent to proceed before a United States Magistrate Judge, including consent to proceed before a United States Magistrate Judge for dispositive pretrial matters.  (Paper No. 18.)  However, in August 1999, all parties agreed to proceed before a United States Magistrate Judge for all proceedings in the case, including trial and entry of a final judgment.  Judge William Nickerson signed an order referring this case to the undersigned for all proceedings on August 31, 1999.

2. Local Rule 105.2.a prohibits the filing of surreply memoranda without approval of the court.  Both parties in this case ignored this rule, and filed surreplies.  Ordinarily I would not consider these briefings.  However, in this case I will do so in order to fully dispose of the issues raised.  Counsel are forewarned that, in future cases, if unauthorized surreplies are filed, they may well be disregarded by the court.

3. Baxter asserts in its motion papers that Mentor Corporation was never served.  Plaintiff does not argue otherwise, and there is no record of service in the court file.  The implants which are the subject of this case allegedly were manufactured by Heyer–Schulte Corporation, a wholly owned subsidiary of American Hospital Supply Corporation.  In March 1984, American Hospital sold its breast implant product line to Mentor Corporation, and in the process American Hospital agreed to indemnify Mentor for any liability arising out of implants manufactured by Heyer–Schulte.  In November 1985, American Hospital was acquired by Baxter Travenol Laboratories, Inc. In December 1988, American Hospital merged into Travenol Laboratories, and this entity is now called Baxter Healthcare Corporation.  *Lee v. Baxter Healthcare Corp.*, 721 F.Supp. 89, 91 (D.Md. 1989).  Since Baxter appears to be responsible to satisfy any liability of Mentor in connection with the implants involved in this case, this may explain why Mentor was not served.  In any event, since Mentor was not served, the granting of summary judgment in favor of Baxter finally resolves this case against all defendants within this court's jurisdiction.

## BACKGROUND

This lawsuit stems from surgery the plaintiff, Ms. Kelly Miskin ("Miskin"), underwent in April 1983, during which silicone filled implants were inserted into her breasts.  She originally filed suit in this court in October 1992, but in March 1993, the case was transferred to the Northern District of Alabama as part of multidistrict litigation proceedings.  By order dated March 2, 1998, the case was remanded to this court for all further proceedings.  (Paper No. 8.)  Plaintiff's second amended complaint, (Paper No. 3), asserts the following causes of action against Baxter, and Mentor Corporation, its co-defendant[3]: negligence, strict liability, fraud, failure to warn, intentional infliction of emotional distress, negligent infliction of emotional damages, and breach of implied warranty.  (Second Am. Compl., Paper No. 3.)  All of these causes of action turn on the plaintiff's claim that her implants were defective and caused her to develop Crohn's syndrome, and suffer other physical and emotional injuries.  Because the surgery during which the breast inserts were in-

stalled took place in Maryland, the parties agree that Maryland law controls the substantive issues in this case. (Paper No. 42) (order directing counsel to inform the court if they contend that law other than Maryland law controls substantive issues).

The essence of Baxter's motion is that plaintiff has failed to meet her burden during summary judgment practice to identify evidentiary facts sufficient to create a genuine issue of material fact with respect to product defect, and causation. According to Baxter, the plaintiff has failed to identify admissible evidence which will be provided by any expert to establish that the implants in question were defective, or that they caused the injuries plaintiff claims. Because I agree, I will enter summary judgment in behalf of Baxter.

## LEGAL ANALYSIS

The law is well settled that summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which he or she bears the burden of proof. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Runnebaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir.1997); *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817–18 (4th Cir.1995) (holding that once a defendant makes a properly supported motion for summary judgment the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue of fact for trial). To meet this burden, the non-moving party must produce competent evidence on each element of his or her claim. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Runnebaum*, 123 F.3d at 163. While a court must draw all reasonable inferences in favor of the non-moving party when ruling on a summary judgment motion, that party may not create a genuine issue of material fact through mere speculation, or building one inference upon another. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Runnebaum*, 123 F.3d at 164 (noting that unsupported speculation is not enough to defeat a motion for summary judgment); *Sylvia Dev. Corp.*, 48 F.3d at 817–18 (holding that only reasonable inferences from the evidence need be considered by the court, and that it is the duty of the court to withdraw from the jury a case if a necessary inference is so tenuous that it rests on speculation or conjecture). To be entitled to consideration on summary judgment, the facts set forth by the parties in affidavits or otherwise must be such as would be admissible in evidence. *See* Fed.R.Civ.P. 56(c).; *see also Sakaria*, 8 F.3d at 171 (finding that the district court properly did not consider inadmissible hearsay in an affidavit during summary judgment practice); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315–16 (4th Cir.1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof in his claim at trial."), *Greensboro Prof'l Fire Fighters Assoc. Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir.1995) (concluding that inadmissible hearsay could not support an opposition to summary judgment). Similarly, unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)—that the documents be admissible in evidence. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993).

Moreover, a mere scintilla of supporting evidence is not enough to defeat a summary judgment motion. The non-moving party must identify sufficient evidence that reasonable jurors could find by a preponderance of the evidence. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Sylvia Dev. Corp.*, 48 F.3d at 818. Finally, to support causation in the face of a summary

judgment challenge, evidence which amounts to a probability, not just a possibility, must be identified by the non-moving party, to guard against "raw speculation" by the fact finder. *Sakaria,* 8 F.3d at 172–73 ("In a long line of decisions in this circuit we have emphasized that proof of causation must be such as to suggest 'probability' rather than mere 'possibility'; where resolution of a causation issue depends on expert opinion, it must meet the standard of probability."); *see also David-son v. Miller,* 276 Md. 54, 61–62, 344 A.2d 422 (1975) (quoting *Ager v. Baltimore Transit Co.,* 213 Md. 414, 421, 132 A.2d 469 (1957)) ("Maryland cases . . . have stated . . . that the test to be applied, whether the question involved is the existence of an injury or its cause, is reasonable probability or reasonable certainty.").

■ With respect to the substantive law which controls the outcome of the pending motion, it is clear that Maryland law requires the plaintiff to produce evidence that the implants were defective, and that this was the proximate cause of the injuries she claims. *Lee v. Baxter Healthcare Corp.,* 721 F.Supp. 89, 95 (D.Md.1989), (citing *Phipps v. General Motors,* 278 Md. 337, 363 A.2d 955 (1976)); *see also Owens–Illinois, Inc. v. Armstrong,* 326 Md. 107, 117, 604 A.2d 47 (1992) (citing *Phipps v. General Motors,* 278 Md. 337, 344, 363 A.2d 955 (1976)) ("Causation is a necessary element of any strict liability action."); *Jensen v. Am. Motors Corp.,* 50 Md.App. 226, 230, 437 A.2d 242 (1981) (requiring plaintiff, in a product liability case alleging negligence, breach of warranty and strict liability, to present evidence of a defect and that such defect was the proximate cause of the injury). Additionally, as this court noted in an earlier breast implant case, expert testimony is usually necessary since the evidence relating to causation involves technical medical questions beyond the common knowledge of laypersons, *Lee,* 721 F.Supp. at 96, and the interaction of a breast prosthesis with the human body raises technical questions

requiring expert testimony. *Id.; see also Virgil v. "Kash N' Karry" Serv. Corp.,* 61 Md.App. 23, 31, 484 A.2d 652 (1984) (noting that "[t]he general rule is well established that expert testimony is only required when the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layman"); *Hartford Accident & Indem. Co. v Scarlett Harbor Assoc. Ltd. Partnership,* 109 Md.App. 217, 257, 674 A.2d 106 (1996) (holding that expert testimony is required for matters which jurors would not be aware of through common knowledge). Thus, if the plaintiff has failed to identify admissible evidence with respect to establishing that the implants were defective, and that such defect caused her injuries, then Baxter is entitled to summary judgment, because each of the tort claims asserted against Baxter depends upon plaintiff proving both defect, and causation. Similarly, her warranty claim requires her to show that the implants were not fit for their intended purpose, MD. CODE ANN., COM. LAW § 2–315(1) (1998) ("Where the seller . . . has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment . . . there is . . . an implied warranty that the goods shall be fit for such a purpose."), and that she suffered damages as a consequence. *See Mattos, Inc. v. Hash,* 279 Md. 371, 379, 368 A.2d 993 (1977) (noting that in an action for breach of warranty it is necessary to show that a warranty was breached and that this breach was the proximate cause of the injury). Therefore, proof of defect and causation is also required to support her warranty claim. As will next be seen, the plaintiff has failed to meet her burden in this regard.

## DISCUSSION

In response to Baxter's challenge, plaintiff has identified the following sources of evidence to support her defect and causation claims: (1) Irving Brick, MD, a treat-

ing physician; (2) Sanford Richmond, MD, a treating physician; (3) two untitled, unauthenticated, medical treatises; (4) a list of sixteen unauthenticated documents, containing no description of the contents of the documents; (5) Dr. Klein, a treating psychiatrist, who was first identified, but than later withdrawn, as a source of testimony at trial; (6) Casaba Magassy, MD, the surgeon who originally did the insert surgery on plaintiff; (7) seven "experts," for whom no Fed.R.Civ.P. 26(a)(2)(B) disclosures, affidavits, or transcripts of deposition or trial testimony were furnished, (8) a list of 18 non-treating, "experts" who have testified in connection with other breast implant cases, and (9) a list of nine "experts," first identified in a paper filed as part of the briefing of this motion on June 16, 1999,[4] long after the close of discovery,[5] and without any Rule 26(a)(2)(B) disclosures, summary of expected testimony, affidavits, or excerpts from deposition or trial testimony. As next will be seen, taken individually, and collectively, the facts which the plaintiff has identified to create triable issues regarding product defect and causation do not amount to evidentiary facts, and fall far short of what is needed to meet Baxter's summary judgment challenge.

### 1. *Irving Brick, MD.*

Dr. Brick was identified by the plaintiff as a trial witness in a "supplemental" witness designation, and in a letter from plaintiff's counsel to Baxter's counsel. (Def.'s Reply Mem., Ex. 1 & 2, Paper No. 26.) These designations contain no description of what Dr. Brick would testify to at trial, and no affidavits or deposition or trial testimony excerpts were provided. Thus, as to Dr. Brick, plaintiff has failed to produce any evidentiary facts to challenge Baxter's motion.

**4.** Plaintiff's supplemental memorandum (Paper No. 36.)

**5.** The amended scheduling order issued by Judge Nickerson imposed a discovery cutoff

### 2. *Sanford Richman, MD.*

As to Dr. Richman, plaintiff's treating physician, she has identified three sources of information regarding his expected trial testimony; a letter dated October 13, 1993 ( Pl.'s Opp'n Mem., Ex. A, Paper No. 23); a letter dated May 4, 1994 (Pl.'s Opp'n Mem., Ex. B, Paper No. 23); and citation to his deposition testimony of May 24, 1999 (Pl.'s Supplemental Mem., Paper No. 36; Def.'s Surreply Mem., Ex. A, Paper No. 33). The October 13, 1993 letter is unsworn and unauthenticated, making it inappropriate for consideration during summary judgment. *See Orsi,* 999 F.2d at 92. Even if I were to consider its substance, however, it does not amount to admissible evidence of defect or causation, as Dr. Richman refers only to a "possible relationship" between Crohn's disease and the plaintiff's implants. In addition, he acknowledges that the etiology of Crohn's disease is not totally clear, and that there is no convincing medical evidence that relates it to silicone implants. He concludes only that it is "possible" that there is a temporal relationship between Crohn's disease and the plaintiff's implant. This does not rise to the level of probability required by the Fourth Circuit to create a triable issue of fact on causation. *Sakaria,* 8 F.3d at 172–73; *see also Davidson,* 276 Md. at 61–62, 344 A.2d 422.

Dr. Richman's May 4, 1994 letter is similarly deficient. It is unsworn and unauthenticated, and merely recites the plaintiff's symptoms and the care he has given her. The letter is silent about defect or causation, and therefore is of no evidentiary value on these issues. Finally, the excerpts of Dr. Richman's deposition testimony which were cited by the parties are substantively insufficient to create a triable issue on defect or causation. For example, at page 12 of his deposition, Dr.

of April 30, 1999, and set a trial date of September 13, 1999. (Am. Scheduling Order, Paper No. 15.)

Richman testified that he did not have an opinion, to a reasonable degree of medical probability, that a relationship existed between plaintiff's silicone breast implants and her Crohn's disease, acknowledging that he only thought there was a possible relationship, and that he did not feel strongly about this. Further, he testified that he told plaintiff's counsel that he was not qualified to serve as a retained expert in this case, because he lacked the necessary research credentials.[6] Further, when asked whether it would be fair to say that if he should testify at trial, he would not express the opinion that plaintiff's Crohn's disease was caused by her silicone breast implants, he answered: "No. I would not offer that opinion". (Def.'s Surreply Mem., Ex. A at 145–46, Paper No. 33.)

In her final briefing, (Paper No. 36), plaintiff quotes—but fails to attach an excerpt of the deposition transcript—Dr. Richman as testifying in his deposition that "I think that I would be willing to say that most of the evidence points to Crohn's disease being caused by a autoimmune process. I'm not a hundred percent certain of that. But within the realm of probability in terms of what most physicians believe today, it probably is caused by an autoimmune process". Even if this conclusory opinion, offered without any of the foundational facts which are required to enable the court to determine, pursuant to Fed.R.Evid. 104(a), 702 and 703, whether it would even be admissible,[7] is accepted as true, it still falls far short of the mark.

The opinion offers no nexus between the plaintiff's implants and any autoimmune injury, and further is silent with regard to any defect in the implants themselves. Thus, from a review of all of the sources of Dr. Richman's opinions which have been made a part of the record in this case, no admissible evidence has been identified which would support the plaintiff's theories of defect and causation.

### 3. Medical treatises, list of documents.

■ Plaintiff attached as exhibit C to her opposition memorandum, (Paper No. 23), two unauthenticated medical treatises, one of which was also unidentified. To be considered, they would have to be shown to be admissible in evidence. Thus, there would have to be some evidence to show that they are authentic, as Fed.R.Evid. 901 requires, and, if they are to be considered for their substantive value, that they qualify as learned treatises under Fed.R.Evid. 803(18). These foundational facts are entirely lacking, making the treatises unauthenticated, inadmissible hearsay, which cannot be considered during summary judgment.

Similarly, the list of sixteen documents identified by plaintiff to support her defect and causation claims, (Pl.'s Opp'n Mem., Ex. D, Paper No. 23), is inadmissible. The exhibit simply lists the documents by date, giving only a brief description of each document. There is no affidavit or other authenticating information, the documents themselves were not attached, nor was any

---

**6.** As a treating physician, it would still be possible to identify Dr. Richman as a trial witness; and to have him express admissible opinions even if he was not offered as a retained expert. Fed.R.Civ.P. 26(a)(2)(A); *see also Sullivan v. Glock,* 175 F.R.D. 497 (D.Md. 1997). Unfortunately, the opinions Dr. Richman has regarding causation are not admissible, as described above.

**7.** *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). When determining, under Rules 56, as well as 50, whether a triable issue of fact has been raised to warrant submission of a case to a jury, the court is not required to accept something as true, simply because an expert has said it is so. *See Stalnaker v. General Motors Corp.,* 972 F.Supp. 335, 337 (D.Md.1996) (granting summary judgment because experts provided only conclusions, and therefore did not generate a triable dispute regarding design failures); *see also May v. Dover Elevator Co.,* 845 F.Supp. 377, 381 (E.D.Va.1994) ("It is established that, if an expert lacks a sufficiently reliable factual or scientific basis for an opinion, it would not be admissible at trial and hence cannot create a genuine dispute as to a material issue of fact.").

summary of their contents. The list is therefore inadmissible, Fed.R.Evid. 901, 802, and may not be considered during summary judgment practice.

### 4. Doctors Klein and Magassy.

In a letter dated April 15, 1999, plaintiff's counsel informed defendant's counsel that Dr. Klein would not be offered as a trial witness because he had no views on the medical issues in the case. (Def.'s Reply Mem., Ex. 2, Paper No. 26.) Nothing further was provided regarding any opinions Dr. Klein may have. There is nothing of evidentiary value, therefore, which he contributes to summary judgment analysis.

Similarly, while plaintiff identified Dr. Casaba Magassy, her treating surgeon, as a trial witness in her supplemental witness designation, no proffer of his testimony was included, nor was any affidavit provided by the plaintiff, or any excerpt from deposition testimony. Instead, the defendants produced an affidavit from Dr. Magassy,[8] in which he stated that he has not agreed to act as an expert witness for the plaintiff, and disclaims any opinion to a reasonable degree of medical certainty that plaintiff's implants had any defect which caused her any injury. (Def.'s Reply Mem., Ex. 3, Paper No. 26.) Plaintiff offered nothing in response to this affidavit. Accordingly, Dr. Magassy offers no support for her defect and causation theories.

### 5. Plaintiff's "supplemental" designation of experts.

■ After Baxter filed its summary judgment motion, plaintiff submitted two separate "supplemental" expert designations. The first, dated April 3, 1999, identified seven experts who previously had provided deposition and/or trial testimony in other silicone implant cases. (Def.'s Reply Mem., Ex. 1, Paper No. 26.) Despite the fact that all seven had previously testified, plaintiff failed to attach any transcript excerpts to establish what their testimony would be, nor did she even summarize what their prior testimony was. As the cases cited above establish, this is not sufficient during summary judgment to carry the plaintiff's burden to show triable issues of fact with respect to each essential element of her claims. Accordingly, the seven additional experts identified by name only on April 3, 1999, provide no support for plaintiff's position at summary judgment.

Similarly, on May 4, 1999, plaintiff filed a supplemental response to the defendant's motion. (Paper No. 28.) Attached at exhibit A is a supplemental designation of expert witnesses, listing eighteen experts, none of whom were treating physicians, and outlining the testimony each might provide at trial. While the summaries give some idea what each expert might say at trial, they are nonetheless general, often vague, and not tailored to the specifics of the plaintiff's claims in this case. Further, as non-treating physicians, each of these experts was subject to the disclosure requirements of Rule 26(A)(2)(B).[9] None of the disclosures meets these requirements, either in substance, or in form, further depriving this court of the ability to assess

---

8. To be considered on summary judgment, an affidavit must affirmatively show that the affiant is competent to testify, and has personal knowledge of the facts sworn to. Fed. R.Civ.P. 56(e). Dr. Magassy's affidavit fails to recite that he has personal knowledge of the facts contained therein. However, because the facts derive from his role as the doctor who performed the surgery in which the plaintiff's breast implants were inserted, its clear that he does have personal knowledge, as required.

9. Both by the requirements of the rule itself, as well as an order of the multidistrict court, "Appendix B to order no. 30 (CV 92–P–10000–S) Retained Experts—Disclosure, Discovery and Testimony." ( Pl.'s Supplemental Resp., Ex. A, Paper No. 28.) This order clearly provides at paragraph 2(A) that retained experts' reports must comply with the requirements of Rule 26(A)(2). That rule requires, at subsection (B), that comprehensive disclosures be provided in written reports signed by each retained expert.

whether the proffered testimony would be admissible at trial. Similarly, the plaintiff failed to provide affidavits or excerpts from deposition/trial testimony with respect to any of the eighteen additional retained experts, thus failing to provide any facts from which this court could determine whether the proffered testimony would be admissible at trial. Accordingly, as discussed above, the designation of the eighteen additional experts fails to support the plaintiff's position at the summary judgment stage.

### 6. Plaintiff's final designation of Nine "experts".

In Paper No. 36, plaintiff's final supplemental summary judgment submission, she identifies by name and case title nine experts who provided testimony in other breast implant cases on the issue of causation. As repeatedly stated above, identification of these experts by name alone, with no proffer of expected testimony, affidavit, or transcript excerpt, adds nothing to sustain plaintiff's burden of establishing triable issues of defect and causation.

In summary, analyzed individually, and collectively, each of the sources of evidence of product defect and causation identified by the plaintiff in her summary judgment papers fails to meet the long established summary judgment standards, discussed above. Plaintiff has, accordingly, failed to meet her burden to show that there are triable issues of fact regarding product defect, and causation. Without proof of these two elements, each of the plaintiff's claims fails, and for this reason, defendant is entitled to summary judgment.[10] A separate order shall issue.

---

**10.** Plaintiff argues in her final submission, (Paper No. 36), that even if her claims for injuries associated with Crohn's disease do not survive summary judgment, she has nonetheless established that her claims for pain and suffering, and mental anguish must survive. However, this is so only if she has presented sufficient evidentiary facts to establish product defect, and a causal nexus with each of her asserted non-Crohn's disease injuries. As the above analysis demonstrates, she has failed to do so. Thus, none of her claims for injuries can survive summary judgment.