Mark GIDDINGS, Personal Representative for the Estate of Pauline Rodman, Deceased, Plaintiff,

v.

BRISTOL–MYERS SQUIBB CO. et al, Defendant.

No. CIV.A.AW–97–101.

United States District Court, D. Maryland, Southern Division.

March 29, 2002.

Douglas R. Thomas, Thomas, Pearlstein and Essex, Beltsville, MD, Leslie D. Silverman, Law Office, Beltsville, MD, for plaintiff.

Richard Alan Dean, Arter and Hadden LLP, Washington, DC, for defendants.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff brings this products liability case on behalf of his deceased mother, Mrs. Pauline Rodman, alleging defects in certain breast implants manufactured by Defendants, Bristol–Myers Squibb Co. ("Bristol–Myers"), Medical Engineering Corp. ("MEC"), and MEC Subsidiary Corp. (formerly known as "Surgitek"). On May 3, 2001, the Court granted Defendants' Motion for partial summary judgment relating to all claims of wrongful death and systemic injury. Pending before the Court is Defendants' Motion for Summary Judgment as to the remaining claims for local inflammation of breast tissue. Alternatively, Defendants move to exclude Plaintiff's two experts, who are preparing to testify on the issues of product defect and causation.

The parties have fully briefed the Motion. No hearing is deemed necessary. *See* Local Rule 105.6. Upon consideration of the arguments made in support of, and opposition to, the respective motion, the Court makes the following determinations.

## I. FACTUAL BACKGROUND

In 1979, Dr. Teimourian, Mrs. Rodman's doctor, surgically implanted an artificial breast, manufactured by MEC, in the right-hand portion of Mrs. Rodman's chest. The breast implant was the result of reconstruction surgery following a mastectomy of her right breast due to cancer.

Mrs. Rodman never had an implant in her left breast. In 1992, following complaints of discomfort, the same doctor partially removed the artificial breast. At that time, the doctor found a rupture in the implant. Because of Mrs. Rodman's health, the doctor completed only a partial removal of the implant.

Mrs. Rodman died in 1996. During the autopsy, Dr. King of the Maryland Medical Examiner's Office found another breast implant (hereinafter "second breast implant") in Mrs. Rodman's right breast. The second breast implant was not ruptured[1] and its manufacturer remains unknown. Moreover, the parties do not know how, when or who placed the second breast implant in Mrs. Rodman.[2] Dr. King took a biopsy of the surrounding tissue and noted an inflammation in the immediate area of the breast capsule.

Initially brought in 1997, this case boils down to whether the MEC breast implant or the second breast implant, if either, was defective and caused the alleged injury. Plaintiff argues that the MEC breast implant caused the inflammation and injury. Defendants argue that their implant was not defective and that the second breast implant caused the alleged injury. Defendants move for summary judgment or, in the alternative, to preclude Plaintiff's experts from testifying that the MEC breast implant was defective or caused the alleged injury.

## II. DISCUSSION

### A. Motion for Summary Judgment

In reviewing a motion for summary judgment, the court must review the facts

---

1. Dr. King described the second breast implant as, "Intact breast implant surrounded by an intact fibrous capsule." For the purpose of this Motion, the Court assumes this fact to be true.

2. Dr. Teimourian speculates and deems it logical that he might possibly have done a "pig-gy-back" implantation in 1979, wherein he placed one implant on top of another. But his operative notes do not reflect that procedure, nor can he confirm it by recollection. It is also possible that Mrs. Rodman had another implant placed in 1992, but this cannot be confirmed.

in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). Rule 56(c) of the Federal Rules of Civil Procedure provides that the entry of summary judgment is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.,* 33 F.3d 390, 393 (4th Cir. 1994); *see also LeBlanc v. Cahill,* 153 F.3d 134 (4th Cir.1998).

 In Maryland, "[r]egardless of the recovery theory, the plaintiff in product liability litigation must satisfy three basics from an evidentiary standpoint: 1) the existence of a defect; 2) the attribution of the defect to the seller; and 3) a causal relation between the defect and the injury." *Jensen v. American Motors, Corp.,* 50 Md.App. 226, 234, 437 A.2d 242, 247 (Md.Spec.App.1981) *quoted in Foster v. American Home Products Corp.,* 29 F.3d 165, 168 (4th Cir.1994) (finding that the same causation requirement applies to actions for negligent misrepresentation of a product). "[P]roof of defect and causation is also required to support [Plaintiff's] breach of warranty claim." *Miskin v. Baxter Healthcare Corp.,* 107 F.Supp.2d 669, 672 (D.Md.1999), *aff'd,* 213 F.3d 632, 2000 WL 517518 (4th Cir.2000) (unpublished opinion). At the summary judgment stage, failure to produce evidence of an essential element may be fatal to a

Plaintiff's case. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir.1993) (recognizing that it is an affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from going to trial) (*quoting Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987)).

 Regarding causation, Plaintiff has the burden of showing generally that the MEC breast implants could cause the injury and specifically that breast implants were the cause-in-fact of the injury. *See Lee v. Baxter Healthcare Corp.,* 721 F.Supp. 89, 95 (D.Md.1989), (citing *Phipps v. General Motors,* 278 Md. 337, 363 A.2d 955 (1976)); *see also Owens–Illinois, Inc. v. Armstrong,* 326 Md. 107, 117, 604 A.2d 47 (1992). To satisfy this burden "[e]xpert testimony is usually necessary since the evidence relating to causation involves technical medical questions beyond the common knowledge of laypersons, and the interaction of a breast prosthesis with the human body raises technical questions requiring expert testimony." *Miskin v. Baxter Healthcare Corp.* 107 F.Supp.2d 669, 672 (D.Md.1999). Nevertheless, like other evidence, where a party offers irrelevant or unreliable expert testimony to satisfy an element of the offense, the trial Court may exclude the expert testimony from its summary judgment consideration. *Cavallo v. Star Enter.,* 100 F.3d 1150, 1159 (4th Cir.1996).

Citing *Miller v. Bristol–Myers Squibb,* 121 F.Supp.2d 831 (D.Md.2000), Defendants argue that summary judgment is appropriate because, as a matter of law, they cannot be held responsible for an injury allegedly caused by an implant, where there is no evidence they made the implant. In *Miller* this Court observed that "[u]nder Maryland law, the inability of a plaintiff to establish that a defendant actually manufactured her breast implants creates a material deficiency in her *prima*

*facie* case—the element of causation." *Miller v. Bristol–Myers Squibb*, 121 F.Supp.2d 831, 837 (D.Md.2000). There, this Court granted summary judgment to the defendant, a manufacturer of breast implants, because the plaintiff could not establish which defendant manufactured her implant, and therefore, plaintiff could not establish who caused her alleged injury. *Id.*

While not directly analogous, the Court agrees that *Miller* is instructive with regard to what courts must do when a plaintiff fails to produce evidence necessary to develop a *prima facie* case. Here, Defendants do not dispute that they manufactured the breast implant, that the breast implant was surgically implanted in Mrs. Rodman's body, and that the breast implant ruptured. Defendants also do not dispute that Plaintiff can produce at least some evidence of injury. Defendants dispute product defect and causation, arguing that it was the second breast implant, if either, that caused the injury and that Plaintiff has produced insufficient evidence, as a matter of law, to survive summary judgment. Defendants argue that the absence of evidence of a defect creates material deficiencies in plaintiff's *prima facie* case. Because Plaintiff proffers expert testimony to satisfy its burden of proof as to product defect and causation, and without such evidence Plaintiff lacks evidence sufficient to meet its burden at trial, the Court finds it necessary in its summary judgment analysis to turn directly to Defendants' alternative Motion to preclude Plaintiff's two experts. For the reasons discussed below, the Court finds material deficiencies in Plaintiff's *prima facie* case and, therefore, grants Defendants' Motion for Summary Judgment.

### B. *Motion to Preclude Experts from Testifying*

Defendants move to bar the testimony of Plaintiff's two experts on the local injury claim. Plaintiff first expert, Dr. Pierre Blais, a chemist, will speak to the alleged product defect, namely:

> "the appropriateness of the materials defendants chose to incorporate into their products, the compatibility of those materials with each other and with the biological tissue, and the likelihood of failure after a certain period of time."

Plaintiff's Opp. at 14. Plaintiff's second expert, Dr. Andrew Tegeris, a pathologist who reviewed the pathology slide created during the 1996 autopsy, will speak to the alleged causal link between the defect and the injury. He will testify that the defect caused silicone gel to be released into Mrs. Rodman's chest, causing chronic inflammation of her breast tissue and pain. Dr. Tegeris' testimony rests on the foundation of Dr. Blais' testimony. If either is barred, Plaintiff's remaining local injury claim will fail because one's testimony is necessary to establish a product defect, and the other is necessary to show causation.

■ An expert may state an opinion or conclusion if the subject matter is appropriate, the witness is qualified, the witness possesses a reasonable probability regarding the opinion, the opinion has a proper factual basis, and the information used to form that basis of the opinion is the type reasonably relied upon by experts in the particular field. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Fed. R.Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is

based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

■ *Daubert* and Fed.R.Evid. 702 require the trial court to exercise its discretion and act as a "gate keeper," until it is satisfied that the proffered expert scientific testimony meets certain standards of reliability. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199–200 (4th Cir.2001). An essential part of the Court's gate keeping function is to ensure that the expert testimony is more than mere speculation. *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. Only relevant, reliable testimony that is based on scientific knowledge should be admitted. *Id.*

Because the experts rely on each other's testimony, Plaintiff has the burden of proving that both expert witnesses' testimony are admissible pursuant to Rule 702 and the *Daubert* standards. Plaintiff does not have to show that either expert's testimony is scientifically correct, however. *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. Plaintiff must simply show that the methodology used was reliable under *Daubert*'s standards. *See, e.g., Grant v. Bristol–Myers Squibb*, 97 F.Supp.2d 986, 989 (D.Ariz.2000) (*Daubert* standards applied in breast implant litigation). This Court then must exercise its discretion to assess the reliability and relevance of the proffered expert testimony by determining whether the expert has the requisite qualifications to render an opinion under Rule 702, whether the expert used appropriate methodology in arriving at his or her opinions, whether the expert relied on facts or data of a type reasonably relied upon by experts in the particular field, and whether the testimony is relevant, that is, "fits" the facts of the case. *Id.* at 591, 113 S.Ct. 2786.

*Dr. Pierre Blais*

■ Defendants argue that the Court should preclude Dr. Blais from testifying at trial because his testimony does not comport with Rule 702. The Court agrees. Based on the facts and circumstances of this case, the Court finds Dr. Blais unqualified to state an opinion on product defects. Dr. Blais is not a medical doctor. He is not a pathologist. He is not a toxicologist. By his own admission he is not qualified to diagnosis medical conditions, provide treatment, or a give prognosis for a patient. Yet the core of Dr. Blais' testimony is that the MEC breast implant is defective because it presents medical and toxicological risks. Finding that he lacks the basic skills, education and training of a medical doctor, toxicologist or pathologist to opine that the gel is harmful to the human body, the Court exercises its discretion to preclude his testimony.

To be sure, Dr. Blais's testimony lacks reliability and relevance. Dr. Blais has not published any related research or opinions in peer review literature. More significantly, Dr. Blais proposes to testify that the Defendants' product is "grossly defective" in that the gels are the result of "incorrectly formulated reagents," "improper processing," and "contain large amounts of bioavailable reactive impurities with potential for adverse reaction." Yet he concedes that he has not done general testing to confirm or refute the presence of many alleged harmful chemicals he alleges are present. Moreover, Dr. Blais has not done specific testing on the implant removed from Mrs. Rodman's body to confirm or refute the presence of many alleged harmful chemicals, nor has the Plaintiff offered evidence that the alleged harmful chemicals were found in Mrs. Rodman's tissue. Without evidence that the claimed impurities or product defect was present in the implant at issue, or

evidence that the alleged defect was transmitted to Mrs. Rodman's body and caused an injury, the Court finds the testimony inadmissible.

Many federal and state courts have similarly excluded or strictly limited Dr. Blais' proposed testimony on these matters. *See, e.g., Grant v. Bristol–Myers Squibb,* 97 F.Supp.2d 986, 991 (D.Ariz.2000) (finding Dr. Blais' theories unsupported with testing, not developed independent of litigation, and not accepted in the general scientific community); *In re Breast Implant Litig.,* 11 F.Supp.2d at 1242–43 (finding Dr. Blais unqualified by "knowledge, skill, experience, training, [and] education" and noting that his proposed testimony was untested, unpublished in peer reviewed literature, not supported by generally accepted scientific data, not created by using any definable scientific methodology, and not developed independent of litigation); *Cabrera v. Cordis Corp.,* 134 F.3d 1418, 1423 (9th Cir.1998) (affirming district court's exclusion of Dr. Blais's testimony because testimony not tested or published in peer reviewed materials).

Absent evidence of a product defect, Plaintiff necessarily lacks evidence of causation and the fact-finder is left to speculate about which implant, if either, caused the alleged injury. Thus, assuming that Dr. Tegeris' testimony is admissible under Rule 702 and *Daubert,* Plaintiff remains unable to fill significant gaps in evidence required to sustain a *prima facie* case. The mere possibility that Defendants' silicone breast implants could have been defective and caused Ms. Rodman's alleged injury is not sufficient to support a causation claim at summary judgment. *See Davidson v. Miller,* 276 Md. 54, 60, 344 A.2d 422 (1975) (holding that expert testimony cannot be received as evidence unless it is in terms of the "certain or probable and not of the possible."); *see also*

*Miskin,* 107 F.Supp.2d at 671–72. ("[T]o support causation in the face of a summary judgment challenge, evidence which amounts to a probability, not just a possibility, must be identified by the non-moving party, to guard against 'raw speculation' by the fact finder.").

### III. CONCLUSION

Because Plaintiff fails to make a showing sufficient to establish the existence of elements essential to its case, namely a product defect and ultimately causation, the Court GRANTS Defendants' Motion for Summary Judgment. An Order consistent with this Opinion will follow.