**Deborah A. ALFRED, Plaintiff,**

v.

**MENTOR CORPORATION, Defendant.**

No. CIV.A. 05–483–C.

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 22, 2007.

Eric J. Jacobi, Timothy J. Salansky, Clay, Kenealy, Wagner & Adams PLLC, Louisville, KY, for Plaintiff.

James J. Romag, Casey, Brannen & Romag, St. Charles, IL, Thomas C. Smith, Ziegler & Schneider, PSC, Covington, KY, for Defendant.

### ORDER

COFFMAN, District Judge.

This matter is before the court on the defendant's motion to exclude the testimony of Pierre Blais, Ph.D., pursuant to Rule 702 of the Federal Rules of Evidence (DE 26). The court, having reviewed the record and being otherwise advised, will grant the motion to exclude.

## I. BACKGROUND

The plaintiff in this matter claims that she suffered bodily injury, medical expenses, and other damages associated with the replacement of certain allegedly defective breast implants designed and produced by the defendant. More specifically, she claims that expert analysis of her implants "revealed clearly visible manufacturing defects, including, but not limited to, incorrectly molded valve parts." (Compl. at ¶ 8.) In order to support this claim, the plaintiff wishes to introduce allegedly expert testimony from Pierre Blais, Ph.D.

According to his curriculum vitae, Dr. Blais holds a Ph.D. in chemistry and has completed graduate and post graduate studies in polymer chemistry, physics of natural and synthetic materials, and materials engineering. (DE 30–8 at 2.) He has also worked as a research scientist with the Canadian Bureau of Medical Devices of the Health Protection Branch of Health and Welfare Canada, "an organization similar to the U.S. FDA." *Id.* By Dr. Blais's own admission, his background in breast implant litigation "is remarkable": he has frequently been called as an expert witness in cases similar to the matter at hand, and he estimates that he has produced over two thousand technical reports about failed breast implants, all of which are "of unprecedented complexity and completeness when compared to typical expert witness reports." (DE 30–2 at 11, 9.) The plaintiff stipulates that Dr. Blais's testimony in this case "will be restricted to his examination of the implants, his observation of the condition of the implants, and

his opinions regarding defects in the implants[,]" and the plaintiff concludes that these subjects are well "within the scope of his expertise." (DE 30–1 at 3.)

## II. STANDARD OF REVIEW

According to Rule 702, a qualified expert witness may testify if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," provided that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The Supreme Court has held that "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 594, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). At the same time, the Supreme Court has set forth several non-exclusive factors for a trial court to consider in determining whether an expert's testimony is admissible under Rule 702 as reliable scientific knowledge. First, the trial court should ask whether the theory or technique described by the alleged expert can be or has been tested. *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786. Second, the court should ask "whether the theory or technique has been subjected to peer review and publication." *Id.* Third, the court should "consider the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation." *Id.* at 594, 113 S.Ct. 2786 (internal citations omitted). Fourth, the general acceptance of a theory or technique within the relevant scientific commu-

nity "can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community' may properly be viewed with skepticism." *Id.* (quoting *United States v. Downing*, 753 F.2d 1224, 1238 (3d Cir. 1985)) (internal citations omitted).

## III. ANALYSIS

■ In an affidavit submitted by the plaintiff, Dr. Blais concedes that his findings about mechanical defects in breast implants have not been published in peer-reviewed journals and are "unrelated to any scientific theory[,]" but he argues that this is because his findings are so obvious that they do not involve the "significant discoveries" necessary for peer-reviewed publication. (DE 30–2 at 19.) Dr. Blais also concedes that he did not test the plaintiff's implants at issue in this case, but he argues that such tests would be impossible because they would "require[ ] destructive disassembly of the implant." *Id.* at 22. Even if these arguments are accepted at face value, the court finds that by his own admission, Dr. Blais's opinion fails to meet at least two of the four *Daubert* factors.

Other courts have reached a similar conclusion about Dr. Blais's allegedly expert opinions. As the defendant points out, "[m]any federal and state courts have ... excluded or strictly limited" Dr. Blais's testimony on similar matters because "Dr. Blais has not published any related research or opinions in peer review literature" and because Dr. Blais's conclusions are not based on scientific testing.[1] *Gid-*

---

1. The plaintiff and Dr. Blais argue that these and other cases are "anomalies" because in most cases, his testimony about breast implants has been admitted. (DE 30–2 at 29.) To support this claim, the plaintiff cites several similar cases in which Dr. Blais's testimony

was permitted; in rebuttal, the defendant cites several additional cases in which Dr. Blais's testimony was excluded.

Ultimately, this court must consider Dr. Blais's potential testimony in *this* case, and therefore, a full discussion of Dr. Blais's ex-

*dings v. Bristol–Myers Squibb Co.,* 192 F.Supp.2d 421, 426, 425–26 (D.Md.2002); *see also Cabrera v. Cordis Corp.,* 134 F.3d 1418, 1423 (9th Cir.1998) (holding that Blais's opinions were "the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702"); *Grant v. Bristol–Myers Squibb,* 97 F.Supp.2d 986, 991 (D.Ariz.2000) (recognizing that "[m]any other courts have excluded" Dr. Blais's opinion and finding that "Blais may not testify as to any opinion he may have as to defects of breast implants or any other topic that is beyond his qualifications as a chemist"); *In re Breast Implant Litig.,* 11 F.Supp.2d 1217, 1242–43 (D.Colo.1998) (finding that Dr. Blais's opinions "amount to nothing more than subjective opinions" and concluding that they "do not meet the standards of scientific reliability that would permit them to be presented to the jury").

After reviewing the record in this case, this court finds that Dr. Blais's opinion does not meet the standard articulated by *Daubert* and Rule 702, and therefore, the court finds that his testimony should not be admitted. By his own admission, Dr. Blais has failed to present the theory supporting his opinion in peer-reviewed publications. To explain this absence of publication, Dr. Blais concedes that his theory is not appropriate for peer-reviewed publications because "it is not a scientific discovery and is unrelated to scientific theory." (DE 30–2 at 19.) In fact, he acknowledges that his theory "is not even technologically significant as it reflects only production anomalies and vagaries of manufacturing techniques and Quality Assurance." *Id.* Nevertheless, he argues that this absence of publication is

irrelevant because his theory "may be of paramount clinical importance." *Id.*

Even if this court could accurately assess the potential clinical importance of Dr. Blais's work, however, it would be of little help in the matter at hand. By Dr. Blais's own admission, his findings cannot be scientifically tested or evaluated because they do not rest on scientific discoveries and because they are unrelated to scientific theory. Therefore, the court has no basis to assess his theory's reliability beyond Dr. Blais's own assurances that it follows inexorably from "more than a century of research and clinical practice in the control of infectious diseases as well as the work of biomedical pioneers such as Louis Pasteur ... and Joseph Lister ...." (DE 30–2 at 24.) These assurances, however well-founded they may be, are not sufficient safeguards of the reliability and relevance required for the admission of expert testimony under *Daubert* and Rule 702.

█ Finally, Dr. Blais has not provided any convincing alternative justification for the admission of his opinion. He argues, without specific support or citation, that "[i]n the final analysis, [the defendant's] claims surrounding Ms. Alfred's implants are at variance with facts that are known within select clinical and industrial circles but which have not been shared with the FDA and ordinary clinical users." (DE 30–2 at 25.) Again, this is not the expert knowledge contemplated by *Daubert* and Rule 702. Rather, it is esoteric, underground, "aficionado's knowledge," which is "based on unsubstantiated and undocumented information" and "untested and unknown to the scientific community." *Cabrera,* 134 F.3d at 1423. Ultimately, this court concurs with the conclusion

---

tensive and contested history as an expert and allegedly expert witness in breast implant litigation is unnecessary. Nevertheless, this court recognizes that Dr. Blais's opinion has

frequently been excluded because of his inability to meet the very *Daubert* factors which the court finds lacking, based on his own admissions, in this case.

reached by the district court in *Cabrera:* "Dr. Blais'[s] opinions are no doubt sincere, but sincerity is not an indication of reliability under *Daubert* or any other reasonable standard for the admission of expert testimony." 945 F.Supp. 209, 214 (D.Nev.1996). Accordingly,

**IT IS ORDERED** that the defendant's motion to exclude the testimony of Dr. Blais (DE 26) is **GRANTED**.