Wendy MILLER, Plaintiff,

v.

BRISTOL–MYERS SQUIBB
COMPANY, et al.,
Defendants.

No. Civ.A. AW–97–3973.

United States District Court,
D. Maryland.

Oct. 6, 2000.

Michael A. Pretl, Severna Park, MD, Jodi Lyn Hammerman, Michelle A. Parfitt, Ashcraft and Gerel, Baltimore, MD, for plaintiff.

James L. Shea, Dino S. Sangiamo, Venable, Baetjer and Howard, LLP, Baltimore, MD, Richard Alan Dean, Arter & Hadden, Washington, DC, for defendants Bristol–Myers Squibb Company and Medical Engineering Corporation.

Terri Steinhaus Reiskin, Hogan & Hartson, Washington, DC, for defendant Minnesota Mining & Manufacturing Co.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff, Wendy Miller, brings this diversity action against Bristol–Myers Squibb Co. ("Bristol–Myers"), Medical Engineering Corp. ("MEC"), and Minnesota Mining & Manufacturing Co. ("3M"). The complaint includes 29 counts. Plaintiff's main allegations sound in products liability on theories of strict liability, negligence, negligent misrepresentation, and breach of warranty in the use of one of the defendants' products in her breast implant surgery. (Counts 1–9, 11, 13–14, 16–17, 20–23). Plaintiff also seeks relief for fraud (Counts 10, 12, 15), intentional infliction of emotional distress (Count 18), negligent infliction of emotional distress (Count 19), violations of the Lanham Act (Count 25) and violations of the Magnuson–Moss Act (Count 26).

Currently pending before the Court are three motions. All defendants, via two motions, seek summary judgment on the basis that Plaintiff has failed to produce legally sufficient evidence that identifies which defendant manufactured her breast implants. Plaintiff seeks to enforce the alleged terms of a settlement agreement with Bristol–Myers and MEC (collectively "MEC").[1] MEC disputes the existence and terms of the alleged settlement agreement. Furthermore, MEC alleges that Plaintiff failed to satisfy a condition precedent to the settlement agreement.

The motions have been fully briefed by all parties. On October 4, 2000, the Court held a hearing on the pending motions. Upon consideration of the arguments made in support of, and opposition to, the respective motions, the Court makes the following determinations.

## I. FACTUAL BACKGROUND

### A. Breast Implant Litigation

In May of 1979, Plaintiff underwent breast implant surgery. Dr. Nicholas Az-

zato performed the procedure. During the period that Plaintiff received her implants, Gloria Fusco was a nurse in Dr. Azzato's office. In a letter, Ms. Fusco stated that her duties, while employed by Dr. Azzato, included ordering breast implants for surgical procedures and assisting Dr. Azzato in performing breast implantation procedures. (Ex. A., Pl.'s Mot. to Enforce the Settlement Agreement.) Ms. Fusco's letter indicated that, during the period of Plaintiff's breast implant surgery, Dr. Azzato used McGhan and Surgitek breast implants. The letter also stated that, due to Dr. Azzato's death in 1996, Plaintiff's medical records are unavailable to specifically identify which product was implanted into Plaintiff. The implants have not been removed from Plaintiff's body due to financial constraints.

McGhan breast implants were manufactured by 3M following its acquisition of McGhan Medical Corporation in June 1977. Surgitek breast implants were manufactured by Surgitek, Inc., the predecessor in interest to MEC.

### B. The Settlement Agreement

On August 25, 1998, MEC entered into a settlement negotiations with Plaintiff's attorney, Ashcraft & Gerel. A settlement package was approved and several communications occurred thereafter. MEC alleges that the agreement to pay the claims of Ashcraft & Gerel clients was limited to clients that met two conditions. These conditions precedent included: (1) providing "satisfactory proof of product manufacture" and (2) opting out of the Revised Settlement Program of the Breast Implant Multi–District Litigation proceeding in the Northern District of Alabama. (Def.'s Opp'n to Mot. to Enforce Settlement Agreement at 5.) MEC claims that only those of the seventy (70) Ashcraft & Gerel

---

1. Bristol–Myers is the corporate parent of MEC and is joined to this litigation through vicarious liability.

clients that met these conditions could participate in the settlement agreement.[2] Ashcraft & Gerel disputes the existence of any conditions precedent, including the requirement for proof of manufacture. Instead, Ashcraft & Gerel argues that the settlement agreement was negotiated as a package deal in which all seventy (70) clients that submitted settlement claim packages during negotiations would participate.

In a letter dated August 26, 1998, Michelle Parfitt, an attorney from Ashcraft & Gerel, wrote Michael Tanenbaum, counsel for MEC, to memorialize the settlement agreement. The letter listed Plaintiff along with seventy (70) other clients of Ashcraft & Gerel. The letter also stated that additional proof of manufacture for three of Ashcraft & Gerel's other clients was attached.

In a letter dated March 14, 2000, Jodi Hammerman of Ashcraft & Gerel informed Mr. Tanenbaum that "Ms. Miller's release was submitted to Bristol Myers on February 19, 1999." The release called for Plaintiff to be paid $29,102 for settling her claim. The letter stated that, after receipt of the release, Mr. Tanenbaum requested another copy of Plaintiff's settlement package and "additional materials." The letter stated that Ashcraft & Gerel complied with the request for additional information. Ms. Hammerman reiterated Ashcraft & Gerel's position that Plaintiff's case was part of the seventy (70) cases negotiated "as a whole," thus, entitling Plaintiff to immediate payment.

In a response letter to Ms. Hammerman dated March 17, 2000, Diane Pompei reasserted MEC's position that Plaintiff failed to satisfy the condition precedent for entitlement to payment. Ms. Pompei wrote that Ashcraft & Gerel was made aware of the conditions precedent by "numerous conversations with attorneys from ... Ashcraft & Gerel ... regarding [the sub-

mitted] documents and deficiencies in the information provided." The letter also points to another client of Ashcraft & Gerel who has been denied payment for failing to provide proof of her opt-out status.

As of October 4, 2000, sixty-eight (68) of the seventy (70) Ashcraft & Gerel clients have been paid. (Pl.'s Mem. in Supp. of Mot. to Enforce Settlement Agreement at 5.) Three of the paid clients are women who submitted the same letter from Ms. Fusco in their settlement package. Plaintiff has been the only one of four Ashcraft & Gerel clients relying on Ms. Fusco's letter not paid under the settlement agreement.

## II. *DISCUSSION*

### A. *Defendant—3M's Motion for Summary Judgment*

In reviewing a motion for summary judgment, the court must review the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). Rule 56(c) of the Federal Rules of Civil Procedure provides that the entry of summary judgment is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393 (4th Cir.1994); *see LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir.1998).

---

**2.** Defendants do not dispute that whether Plaintiff properly opted out of the global set-

tlement.

### 1. Products Liability—Strict Liability, Negligence, Negligent Misrepresentation, and Fraud

Defendant, in its motion for summary judgment and reply, states that it is entitled to judgment as a matter of law on two grounds: (1) Plaintiff failed to provide legally sufficient evidence identifying 3M as the manufacturer of her breast implants, an essential element in her products liability claims, and (2) Plaintiff failed to meet her evidentiary burden to survive summary judgment.

#### a. Identification of Source of Injury

■■■ As a case brought before the federal court under diversity jurisdiction, the substantive laws of the forum state, Maryland, apply. *See, e.g., Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In Maryland, "[r]egardless of the recovery theory, the plaintiff in product litigation must satisfy three basics from an evidentiary standpoint: 1) the existence of a defect; 2) the attribution of the defect to the seller; and 3) a causal relation between the defect and the injury." *Jensen v. American Motors Corp.,* 50 Md.App. 226, 234, 437 A.2d 242, 247 (Md. Spec.App.1981) *quoted in Foster v. American Home Products Corp.,* 29 F.3d 165, 168 (4th Cir.1994) (finding that the same causation requirement applies to actions for negligent misrepresentation of a product). Specific to this case, Maryland law places the burden upon the plaintiff in a products liability suit to show that the named defendant in the action manufactured the product that caused the injury complained of. *See Lohrmann v. Pittsburgh Corning Corp.* 782 F.2d 1156 (4th Cir.1986) (concluding that, under Maryland law, evidence of the use of three manufacturers' asbestos products in the plaintiff's workplace was insufficient to attribute liability for the plaintiff's injury); *Anchor Packing Co. v. Grimshaw,* 115 Md.App. 134, 692 A.2d 5 (Md.Spec.App.1997) (finding that evidence that manufacturers' asbestos products were generally used in the plaintiff's workplace was insufficient alone to establish that the defendant's products caused the plaintiff's injury), *vacated on other grounds by Porter Hayden v. Bullinger,* 350 Md. 452, 466, 713 A.2d 962, 969 (1998).

■■■ Even drawing all reasonable inferences and attributing the greatest weight to Plaintiff's proffered evidence, Plaintiff still failed to show the requisite causation to support a products liability claim in Maryland. "[T]he complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial .... [leaving] no genuine issue as to any material fact." *Cray,* 33 F.3d at 393. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). First, the content of Ms. Fusco's letter only provides for a choice of alternate tortfeasors. The letter identifies 3M or MEC as the source of the implants, but cannot state with specificity which is ultimately responsible. Second, the actual breast implants are not available for inspection because Plaintiff has not had the implants removed due to financial constraints.

Plaintiff's predicament is very similar to that of the plaintiff in *Lee v. Baxter Healthcare Corp.,* 721 F.Supp. 89 (D.Md. 1989), *aff'd,* 898 F.2d 146 (4th Cir.1990) (unpublished table decision). In *Lee,* the plaintiff's breast implants ruptured ten years after the surgical procedure. *Lee,* 721 F.Supp. at 91. The doctor that performed the breast augmentation testified that he used the breast implants of several manufacturers at the time of the plaintiff's surgery. *Id.* Similarly, neither the plaintiff's medical records nor inspection of the removed breast implants revealed the identity of the actual manufacturer. *Id.* at 91–92. Given the lack of proof that the defendant's product caused the plaintiff's injury, the court granted the defendant's motion for summary judgment. *Id.* at 94.

Similar to the plaintiff in *Lee*, it appears from the record that the Plaintiff will not have testimonial, documentary, or real evidence available at trial to confirm the identity of the manufacturer. Although Plaintiff has produced evidence limiting the number of potential defendants to two (3M or MEC), the facts in *Lee* are sufficiently similar to warrant application of the rule from the case. Under Maryland law, the inability of Plaintiff to establish which defendant actually manufactured her breast implants creates a material deficiency in her *prima facie* case—the element of causation. Without a showing of causation, the Court finds that all of Plaintiff's claims based upon products liability must fail.

### b. Absence of Legally Competent Evidence

■ The defendant's identification of the absence from the record of any admissible evidence establishing causation in Plaintiff's case is sufficient to shift the burden of production to her. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2729.1 (3d.1998). Once the burden has shifted, the evidentiary standard under Rule 56 rises to require the nonmoving party to "set forth specific facts showing there is a genuine issue for trial" by affidavit, depositions, answers to interrogatories, admissions, or other evidence that would be admissible at trial. · Fed.R.Civ.P. 56(c), (56)(e). While the supporting documentation need not be admissible at trial, the materials must show that the nonmoving party has access to admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. In summary, in order to survive summary judgment, Plaintiff must produce legally competent evidence showing that there is a genuine factual dispute as to whether a specific defendant manufactured the breast implants used in her 1979 surgery.

■ Plaintiff failed to support her motion in opposition to summary judgment with additional evidence, in the form proscribed by Rule 56, to rebut Defendant—3M's motion for summary judgment. Plaintiff acknowledges that the letter from Gloria Fusco is her only offer of proof as to the source of the implants. The unsworn, unauthenticated letter from Gloria Fusco is insufficient evidence to counter Defendant's motion for summary judgment. To be admissible for consideration, the document "must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) . . . ." 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2722 (3d.1998). "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993). The letter from Gloria Fusco submitted as an exhibit to Plaintiff's opposing motion has not been authenticated by the author in an accompanying affidavit. Without legally competent evidence tending to prove that Plaintiff can distinguish which defendant's implants she received, there can be no genuine issue of material fact upon which a jury may support a verdict in favor of Plaintiff. Viewing the facts and evidence in the light most favorable to Plaintiff, the Court concludes that 3M is entitled to summary judgment.

### 2. *Request for Limited Discovery*

■ In her opposing motion, Plaintiff seeks further limited discovery of 3M to produce potential evidence linking 3M to her breast implants. Ordinarily, "[a] district court should refuse to grant summary judgment when an opposing party needs additional time to complete discovery and properly respond to the motion." *Health-South Rehabilitation Hosp. v. American Nat. Red Cross,* 101 F.3d 1005, 1009 (4th Cir.1996). Nevertheless, the availability of additional time for discovery is predicated upon the nonmoving party complying with the requirements of Rule 56(f). The need for compliance with Rule 56 is exemplified in *Evans v. Technologies Applications &*

*Service Co.*, 80 F.3d 954 (4th Cir.1996). In *Evans*, the Fourth Circuit affirmed the grant of summary judgment in the absence of discovery when the nonmovant's only request for additional discovery was a reference to her lack of discovery in her opposing memorandum and she did not file any discovery requests, move for continuance to conduct discovery, or file an affidavit complying with Rule 56(f). 80 F.3d at 961.

■ The circumstances here mirror those in *Evans*. The request for additional discovery did not satisfy the requisites of Rule 56(f). To avoid or delay summary judgment to conduct further discovery, Plaintiff needed to submit an affidavit stating why certain evidentiary facts could not be presented with its motion. *See Pine Ridge Coal Co. v. Local 8377, United Mine Workers of America*, 187 F.3d 415 (4th Cir.1999); Fed.R.Civ.P. 56(f). Plaintiff did not submit such an affidavit. Plaintiff has not made a motion for discovery or sought discovery from Defendant in the two years since instituting this suit.

Although Plaintiff's failure to conduct discovery could be attributed to the settlement negotiations with defendants, Bristol–Myers and MEC, it does not change the fact that discovery at this point appears to be a fruitless venture. Plaintiff acknowledged in her opposing motion that "[o]ver the years since she initiated her action, plaintiff sought to obtain documentation of the manufacturer of her breast implants." (Pl.'s Opp'n to Def.Mot. for Summ.J.) From the plaintiff's submissions, it appears that the letter from Ms. Fusco is the best evidence of manufacture uncovered in her two-year search. Additionally, it appears that Plaintiff's medical records would be needed to link any 3M records to the Plaintiff. (Def.—3M's Reply Br. In Supp.Mot. for Summ.J. at 5–6.) In the wake of Plaintiff's failure to comply with the requirements of Rule 56(f) in her request for additional discovery, her failure to seek discovery over two years, and the dubious benefit of granting such a request,

the Court believes it is appropriate to grant summary judgment in the absence of discovery.

### 3. *Negligence—Failure to Warn*

■ Maryland recognizes the learned intermediary doctrine. *See Nolan v. Dillon*, 261 Md. 516, 276 A.2d 36, 40 (1971); *Hunt by Hunt v. Hoffmann–La Roche, Inc.*, 785 F.Supp. 547 (D.Md.1992). Under the learned intermediary doctrine, the manufacturer of medical devices, such as breast implants, has no duty to warn the patient of the risks associated with products used under the supervision of a doctor. *See Doe v. Miles Laboratories, Inc.*, 927 F.2d 187, 194 (4th Cir.1991); *Lee v. Baxter Healthcare Corp.*, 721 F.Supp. 89, 94–95 (D.Md.1989), *aff'd*, 898 F.2d 146 (4th Cir.1990); *Fellows v. USV Pharmaceutical Corp.*, 502 F.Supp. 297 (D.Md. 1980). The manufacturer's duty to warn is limited to adequately informing the patients' doctor of any risks associated with the product's use. *Brooks v. Medtronic*, 750 F.2d 1227 (4th Cir.1984); *Lee*, 721 F.Supp. at 95. The record does not indicate that the defendant improperly notified Dr. Azzato, Plaintiff's doctor, of the risks associated with the surgical implants. Absent evidence to the contrary, there appears to be no genuine dispute of material fact that 3M owed no duty to warn Plaintiff of any attendant risks. Accordingly, the Court grants 3M's motion for summary judgment as to the negligence claim based upon the failure to warn.

### 4. *Breach of Warranty—Statute of Limitations*

■ Plaintiff seeks recovery for breach of express and implied warranties under the Uniform Commercial Code as adopted in Maryland. Under Maryland commercial law, the statute of limitations for breach of warranty claims is four years from the time of receipt. Md.Code.Ann., Comm.Law I § 2–725 (1997). Plaintiff received her breast implants in May 1979, at which time the statute of limitations began

to run. Thus, her breach of warranty claims against all defendants expired in 1983. Plaintiff did not institute litigation until 1997. Thus, the breach of warranty claims are time barred.

### 5. Intentional Infliction of Emotional Distress

 Plaintiff advances a claim for intentional infliction of emotional distress. In Maryland, a plaintiff asserting a claim for intentional infliction of emotional distress must show that the defendant, intentionally or recklessly, engaged in extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress. *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977). Maryland imposes a high standard for the requisite emotional distress, limiting recognition to "those wounds that are truly severe and incapable of healing themselves." *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 51, 502 A.2d 1057, 1065 (1986). Plaintiff's complaint states that she has "suffered injuries as a result of having been implanted with breast implants...." (Pl.'s Compl. at ¶ 5.) Still, the complaint fails to specify the nature and extent of the emotional injuries suffered by Plaintiff. Without evidence or further explanation, there is no barometer upon which to gauge whether Plaintiff's injuries are sufficiently severe for recognition under Maryland law. As a result of the complete failure of proof on the severity of Plaintiff's emotional distress, the Court grants summary judgment on the intentional infliction of emotional distress.

### 6. Negligent Infliction of Emotional Distress

 Plaintiff also asserts a claim for negligent infliction of emotional distress. Maryland does not recognize an independent tort for negligent infliction of emotional distress. *See Bagwell v. Peninsula Regional Medical Center*, 106 Md.App. 470, 665 A.2d 297 (Md.Spec.App.1995); *Marrs v. Marriott Corp.*, 830 F.Supp. 274 (D.Md.1992). Therefore, the Court finds that Plaintiff has no legally cognizable claim for negligent infliction of emotional distress.

### B. Plaintiff's Motion to Enforce Settlement Agreement

 Plaintiff seeks to compel Defendants, MEC and Bristol–Myers, to pay her $29,102 as specified in her release that was submitted pursuant to a settlement agreement reached with Plaintiff's attorneys, Ashcraft & Gerel. At the hearing, MEC's counsel, for the first time, argued that MEC and Ashcroft & Gerel had entered into a "procedure" not subject to ordinary contract principles. Likening his client to the Internal Revenue Service's discretion to prosecute particular taxpayers for tax evasion, MEC's counsel argues that, under the "procedure," his client held the unilateral power to determine whether a particular client satisfied the conditions precedent of a contract that apparently never was, regardless of any similarities in offers of proof submitted by Ashcraft & Gerel clients. The Court finds this argument unavailing. First, Mr. Tanenbaum, MEC's counsel in the settlement negotiations, expressly acknowledges a settlement agreement and states that, on August 25, 1998, his firm "agreed to settle ... the foregoing claims ..." (Tanenbaum Aff.Ex. 2 at 1–2.) MEC's opposing memorandum states that "MEC and [Bristol–Myers] agreed to pay settlement claim to Ashcraft & Gerel's clients only if those client could establish certain conditions precedent...." (Defs.' Opp'n to Enforce Settlement Agreement at 2.) Further, Defendants seek to avoid liability based upon ordinary contract principles, Plaintiff's alleged failure to satisfy a condition precedent. Equally important, Defendants do not dispute that sixty-eight (68) out of seventy (70) Ashcraft & Gerel clients have been paid under the settlement agreement. The Court believes that a review of the record reveals that both parties acknowledged the existence of a settlement agreement. Thus, the dispute

centers on the terms to which the parties agreed to be bound.

MEC argues that the terms of the settlement agreement included a condition precedent that each client of Ashcraft & Gerel produce "satisfactory proof of product manufacture." MEC claims that the letter from Ms. Fusco submitted on Plaintiff's behalf is not satisfactory proof of manufacture by MEC. Defendants claim that Plaintiff's failure to provide proof of manufacture relieves them of any duty to pay Plaintiff. In opposite, Ashcraft & Gerel argues such a precondition to settlement was never asserted during negotiations. Rather, Ashcraft & Gerel maintains that the parties' intent was to settle all of seventy (70) cases collectively as an indivisible whole. Ashcraft & Gerel claims that Plaintiff fulfilled her performance under the settlement agreement by signing her release of MEC.

 Under Maryland law, "in breach of contract cases, ... in which [a party] is attempting to enforce provisions of [a] settlement agreement, 'the burden of proof is on the plaintiff or on the party who asserts the affirmative of an issue, and such a burden never shifts.'" *Corry v. O'Neill*, 105 Md.App. 112, 125, 658 A.2d 1155, 1161 (Md.Spec.App.1995) (quoting *Kruvant v. Dickerman*, 18 Md.App. 1, 305 A.2d 227 (Md.Spec.App.1973)). Since Plaintiff in this action is seeking to enforce the settlement agreement according to her terms, she carries the burden of proving them.

 In Maryland, "[n]o contractual duty arises when there is an unfulfilled condition precedent to a contract." *Pradhan v. Maisel*, 26 Md.App. 671, 677, 338 A.2d 905 (1975); *Ritz–Craft Corp. v. Stanford Management Group*, 800 F.Supp. 1312, 1317 n. 4 (D.Md.1992) ("A condition precedent is an event, other than mere lapse of time, which, unless excused, must exist or occur before the duty of immediate performance of a promise arises."). Thus, the first question is whether "satisfactory proof of product manufacture" was a con-

dition precedent to triggering MEC's duty to pay Plaintiff under the settlement agreement.

 Neither party has produced a written contract to support their interpretation of the settlement agreement. Instead, the parties rely on affidavits and prior correspondence to prove their respective positions. Thus, it appears from the record that the parties entered into an oral contract. "[T]he existence and terms of an oral contract, when disputed, are for the trier of facts to determine." *Globe Home Imp. Co. v. McCarty*, 204 Md. 513, 517, 105 A.2d 216, 218 (1954). "The determination of whether a provision in a contract constitutes a condition precedent is a question of 'construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation.'" *New York Bronze Powder Co., Inc. v. Benjamin Acquisition Corp.*, 351 Md. 8, 14, 716 A.2d 230, 233 (1998) (quoting *Chirichella v. Erwin*, 270 Md. 178, 182, 310 A.2d 555, 557 (1973)). Since the parties did not reduce their agreement to a writing, there is no written provision to interpret. Thus, the existence and resolution of any ambiguity must be garnered from "other permissible aids" to contract construction. In trying to ascertain the intention of the parties, "the court may consider evidence of such extrinsic factors as the negotiations of the parties, the circumstances surrounding execution of the contract, the parties' own construction of the contract and the conduct of the parties." *Della Ratta, Inc. v. American Better Community Developers, Inc.*, 38 Md.App. 119, 130, 380 A.2d 627, 635 (1977).

The parties differ in their version of the purpose behind the agreement. MEC alleges that it would incur no benefit in paying claimants with no colorable claim against it. The condition precedent requiring proof that MEC manufactured the breast implants would ensure that the settlement only included claimants in which

MEC actually faced potential liability. By contrast, Ashcraft & Gerel argues that MEC obtained the benefit of avoiding litigation in the seventy (70) cases represented by Ashcraft & Gerel, as well as the clients of the two other firms participating in the settlement.

Given the number of pending claims arising out of the breast implant litigation, a reasonable person could conclude that avoidance of multiplicity of suits would motivate Defendants to enter into a bulk settlement agreement. Making settlement arrangements with three law firms representing a large number of plaintiffs in a single transaction would reasonably provide Defendants with a bargained for hedge against their litigation risk. Nevertheless, absent the condition, Defendant would have entered into a settlement agreement for claims that another manufacturer would ultimately be responsible for. Each proffered purpose appears to be reasonable and, neither appears more likely to be true than the other. Thus, the Court finds that Plaintiff has not proven that her interpretation of the contract should prevail.

As to the negotiations, Ashcraft & Gerel states that, during negotiations, Michael Tanenbaum, counsel for MEC, had an adequate opportunity to evaluate the merits of Ms. Fusco's letter in Plaintiff's settlement package and failed to voice objections to her participation in the settlement. Ashcraft & Gerel also alleges that Mr. Tanenbaum was specifically informed during negotiations that an affidavit from Ms. Fusco was their source of proof of manufacture for four (4) clients of the seventy (70) clients. Ashcraft & Gerel claims that Mr. Tanenbaum responded that he would "take [the information] under advisement." (Pl.'s Reply to Def.'s Opp'n to Mot' to Enforce Settlement Agreement at 1.) By contrast, Mr. Tanenbaum claims to have specifically informed Ms. Parfitt, before and after receipt of the August 26th letter, that proof of manufacture by MEC was required for participation in the settlement. (Tanenbaum Aff., Ex. 2, Def.'s Opp'n to Mot. to Enforce Settlement Agreement at 2.) Since both parties submitted affidavits and subsequent correspondence, each party's evidence and version of the facts are equally insufficient to prove the terms of the settlement agreement. "[A]verments in an affidavit purporting to present the substance of contracts will be admissible to show the fact that the agreements have been entered into, but will be insufficient to prove the terms of the agreement unless sworn or certified copies of them are attached to the affidavit." 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2722 (3d.1998). As a result, Plaintiff has still not carried her burden of proving the absence of a condition precedent.

The subsequent conduct of the parties is equally ambiguous. Mr. Tanenbaum alleges that on several occasions, after reaching the settlement agreement, his firm requested and received from Ashcraft & Gerel additional documentation showing proof of manufacture for several of Ashcraft & Gerel's clients, including Plaintiff. MEC alleges that the subsequent submission of supplemental documents shows that proof of manufacture was a condition precedent to the agreement. The submission of additional documents showing proof of manufacture in the August 26th letter reasonably indicates an awareness, on the part of Ashcroft & Gerel, that establishing causation was a precondition to procuring settlement. On the other hand, the subsequent submissions also indicate that, when an issue of proof arose, MEC brought that the alleged deficiency to the attention of Ashcraft & Gerel, either during the negotiations or soon thereafter. The record indicates that Defendant's objections to Plaintiff's offer of proof were not communicated until almost a year after the settlement agreement was reached. (Pompei Ltr. to Hammerman, Ex. 1, Def.'s Opp'n to Enforcement of Settlement Agreement.) Upon reviewing the extrinsic evidence of the intent of the parties, the negotiations

surrounding the contract, and the execution of the contract, Plaintiff has not shown that, more likely than not, proof of manufacture was not a condition precedent to her participation in the settlement agreement negotiated by her attorneys. Consequently, for purposes of reviewing her motion to enforce the settlement agreement, the Court will consider the condition precedent advanced by Defendants to be part of the contract.

The next issue is whether Plaintiff satisfied the condition precedent of providing "satisfactory proof of product manufacture", or whether MEC effectively waived the condition. "Either party to a contract may waive any of the provisions made for his benefit." *Twining v. National Mortg. Corp.*, 268 Md. 549, 555, 302 A.2d 604 (1973). As the party availing itself of the benefit of the condition precedent, MEC had the option of waiving the proof of manufacture requirement. *See Giardina v. Farms Co.*, 25 Md.App. 201, 333 A.2d 366 (Md.Spec.App.1975) ("Optionor may, by his words or conduct, waive strict compliance by optionee with the terms of the option as to a condition precedent....").
"A condition precedent may be waived by the subsequent dealings between the parties to the contract." *Maryland Fertilizing & Mfg. Co. v. Lorentz*, 44 Md. 218 (1876); *accord Mercantile Safe Deposit and Trust Co. v. Delp and Chapel Concrete and Const. Co.*, 44 Md.App. 34, 43, 408 A.2d 1043, 1048 (1979); *University Nat. Bank v. Wolfe*, 279 Md. 512, 369 A.2d 570 (1977). "Whether the subsequent conduct of the parties amounted to a modification or waiver of their contract is generally a question to be decided by the trier of fact." *Giardina*, 25 Md.App. at 201, 333 A.2d at 366.

Ashcraft & Gerel argues that, even if proof of manufacture was a condition precedent to participation in the settlement, the condition was satisfied or waived by Defendants's conduct. Ashcraft & Gerel maintains that, in the course of performing the contract, MEC's payment of three other clients using the same letter from Ms. Fusco evidences MEC's previous acceptance of the letter as satisfactory proof of manufacture for participation in the settlement. In these instances, Ashcraft & Gerel alleges that MEC voiced no objections to the letter as an adequate source of proof under the settlement agreement. Defendants do not dispute these prior instances of payment in the face of identical evidence of causation. Instead, Defendants argue that there is no evidence in the record to support the existence of these three women. The letter from Ms. Fusco (Ex. A. Pl's Mot. to Enforce Settlement Agreement) lists the names of three other women that match three Ashcraft & Gerel clients named in the August 26th letter to Mr. Tanenbaum. Defendants do not dispute making payment to 68 women. The two women not paid include Plaintiff and another client not at issue. The Court believes that Defendant would not pay women that did not exist. Hence, by process of elimination, the Court finds that Defendants paid the three other women who relied on Ms. Fusco's letter as their offer of proof.

Moreover, the Court finds that the subsequent conduct of MEC in making the prior payments to other Ashcraft & Gerel clients indicates either that the letter from Gloria Fusco was an acceptable form of documentation under the agreement, or that the condition precedent was waived as to clients relying on the letter. Since MEC now states that the letter is not satisfactory proof of product manufacture, the Court concludes that MEC waived the condition precedent in allowing three of the four women relying on the Fusco letter to participate in the settlement. Given that MEC does not dispute that Plaintiff validly opted out of the global breast implant settlement program and submitted the agreed upon release, it appears that Plaintiff has tendered full performance under the settlement agreement and is entitled to MEC's return performance. Ac-

cordingly, the Court grants Plaintiff's motion to enforce the settlement agreement.

### C. Defendants—Bristol–Myers and MEC's Motion for Summary Judgment

The Bristol–Myers and MEC's motion for summary judgment presents the same issues of causation and proof as 3M's motion for summary judgment. Ordinarily, the Court would granted the motion on the same grounds outlined in the discussion of Defendant–3M's motion. However, the existence of a valid settlement agreement changes the dynamics.

> "A valid compromise and settlement is final, conclusive, and binding upon the parties and upon those who knowingly accept its benefit. It is as binding as any contract the parties could make, and as binding as if its terms were embodied in a judgment, and, regardless of what the actual merits of the antecedent claim may have been, they will not afterward be inquired into and examined." 15A Am.Jur.2d *Compromise and Settlement* § 25; see *Sisson v. City of Baltimore*, 51 Md. 83 (1879).

As discussed earlier, the Court finds that MEC and Bristol–Myers previously entered into an agreement settling Plaintiff's claims. The Court concludes that Plaintiff satisfied all conditions and promises accorded to her performance under the settlement agreement. Hence, the Court denies MEC and Bristol–Myer's motion for summary judgment as moot pursuant to the valid settlement agreement between the parties.

### III. *CONCLUSION*

For the reasons stated above, the Court will grant 3M's Motion for Summary Judgment, grant Plaintiff's Motion to Enforce the Settlement Agreement, and deny Bristol–Myers and MEC's joint Motion for Summary Judgment. The Court orders Defendants—Bristol–Myers and MEC to pay Plaintiff the sum of $29,102 as specified in Plaintiff's release. In light of the rulings articulated in the opinion, the Court does not find Bristol–Myers and MEC's motion to file a surreply necessary for resolution of this matter and, therefore, denies the motion. Similarly, the Court denies Plaintiff's motions to stay defendants' motions for summary judgment. An Order consistent with this Opinion will follow.